Justice BIRCH,
dissenting.
In contrast to the view of my colleagues, I would hold that the evidence of premeditation adduced against the defendant in *268 this case is insufficient to support the conviction of first degree premeditated murder. This view finds partial support in the following excerpt from the majority opinion:
When Christina approached, the defendant said, “Get back or I’ll kill her.” Christina stepped back, and the victim told the defendant to put the knife away and she would go with him. The defendant put the knife in his pocket, apologized, and released the victim. When the victim fled toward the restaurant, the defendant followed, tackled the victim, pulled out his knife, slashed her throat and stabbed her multiple times.
The above excerpt amply indicates, in my opinion, that Suttles clearly and unequivocally abandoned any thought about harming the victim. (This intent was, however, unfortunately reignited when the victim fled toward the restaurant.)
To convict upon unpremeditated murder (second degree murder), the State must prove beyond a reasonable doubt that the defendant unlawfully killed the alleged victim and that the defendant acted knowingly. Tenn.Code Ann. § 39-13-210 (1997).
On appellate review of evidentiary sufficiency, the proper inquiry is whether “considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” State v. Hall, 8 S.W.3d 593, 599 (Tenn.1999) (citing Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
For the reasons expressed herein, and especially upon analysis under the criterion above-described, I am unable to approve the conviction for first degree premeditated murder. I would vacate the conviction and enter in its place a conviction for second degree murder with a remand for resentencing.
APPENDIX
(Excerpts from the Court of Criminal Appeals’ Decision)
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
STATE OF TENNESSEE v. DENNIS WADE SUTTLES
Direct Appeal from the Criminal Court for Knox County
No. 60819 Mary Beth Leibowitz, Judge
No. 03C01-9801-CR-00036-Decided September 29, 1999
Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.
Riley, J. delivered the opinion of the court, in Wade, P.J. and Welles, J. joined.
Leslie M. Jeffress and Brandt W. Davis, Knoxville, Tennessee, for the appellant, Dennis Wade Suttles
Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, Michael J. Fahey II, Assistant Attorney General, Randall E. Nichols, District Attorney General, William Harrison Crab-tree and S. Jo Helm, Assistant District Attorneys General, for the appellee, State of Tennessee.

OPINION

(Deleted Summary of Testimony)
(Deleted Roman numeral “I” — Discussion of Sufficiency of the Evidence of Premeditation)
II. STATUTORY DEFINITION OF SECOND DEGREE MURDER
The defendant contends that the statutory definition of second degree murder is unconstitutionally vague and was incapable of clear definition by the trial court or understanding by the jury. Thus, the jury could not fully consider the charge of second degree murder. He contends that the absence of a true distinction between first degree murder and second degree murder *269 deprived him of due process as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and by Article 1, § 8 of the Tennessee Constitution. We disagree.
In accordance with the definition of second degree murder, as set forth in Tenn. Code Ann. § 89-13-210 (Supp.1995), the trial court gave the following instruction regarding second degree murder:
Any person who commits second degree murder is guilty of a crime.
For you to find the Defendant guilty of this offense, the State must have proven beyond a reasonable doubt the existence of the following essential elements.
1. That the Defendant unlawfully killed the alleged victim, and
2. That the Defendant acted knowingly.
The distinction between voluntary manslaughter and second degree murder is that voluntary manslaughter requires that the killing result from a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner.
Bear in mind, that if you find a knowing killing with adequate provocation, that is voluntary manslaughter.
A person acts intentionally when that person acts with a conscious objective either to cause a particular result, or to engage in particular conduct.
A person acts knowingly if that person acts with an awareness, either that his or her conduct is of a particular nature, or that a particular circumstance exists.
The requirement of knowingly is also established if it is shown that the Defendant acted intentionally.
The second degree murder statute was challenged in State v. Jerry Taylor, C.C.A. No. 01C01-9612-CC-00499, 1998 WL 424570 (Tenn.Crim.App. filed July 29, 1998, at Nashville), perm. to app. denied (Tenn. February 1, 1999), including an assertion that the statute failed to properly differentiate the varying degrees of homicide. In reviewing this claim, this Court held:
In our view, the words of Tenn.Code Ann. § 89-13-210 are sufficiently precise to put an individual on notice of prohibited activities. The language sets out boundaries sufficiently distinct for the courts to fairly administer the law. See State v. Thomas, 635 S.W.2d 114, 116 (Tenn.1982).
1998 WL 424570 at 8. While in State v. Jerry Taylor, the defendant was specifically concerned that the statute failed to differentiate between second degree murder and voluntary manslaughter, the same reasoning is applicable in the present case. In addition to being properly instructed on second degree murder, the jury was clearly instructed that first degree murder required a finding of premeditation, which was fully defined.
This issue is without merit.
III. JURY POOL QUESTIONNAIRE
The defendant contends that the trial court erred by denying his motion requesting permission to distribute a jury questionnaire to the jury pool in advance of voir dire proceedings. We respectfully disagree.
Prior to trial, the defendant filed a “Motion to Order Administration of a Juror Questionnaire.” The attached questionnaire contained 79 questions to be completed by potential jurors. It appears that after a hearing on the matter, the trial court denied the motion; however, a transcript of the hearing is not included in the record.
The goal of voir dire is to ensure that jurors “are competent, unbiased, and impartial, and the decision of how to conduct voir dire of prospective jurors rests within the sound discretion of the trial court.” State v. Howell, 868 S.W.2d 238, 247 (Tenn.1993); see generally State v. Harris, *270 839 S.W.2d 54, 65 (Tenn.1992). In the present case, the defendant does not allege that the jurors who served on his case were incompetent, biased, or partial. Moreover, the record does not reflect that the trial court abused its discretion by denying the defendant’s request to use the jury questionnaire. See State v. Stephenson, 878 S.W.2d 530, 540 (Tenn.1994) (trial court did not abuse its discretion in denying defendant’s pre-trial motion to disseminate a detailed questionnaire to prospective jurors); State v. Smith, 857 S.W.2d 1, 20 (Tenn.1993) (defendant failed to show prejudice as a result of denial of a motion to submit proposed questionnaire to prospective jurors prior to voir dire ).
Accordingly, we find that this argument is without merit.
IY. LIMITATION OF JUROR QUESTIONING
The defendant’s contention that the trial court restricted his questioning of potential jurors is also without merit. During voir dire proceedings, after defense counsel had asked a number of questions to potential jurors, the state requested a bench conference. The state objected to the relevance of the questions being asked by defense counsel. At the end of the discussion, the trial court indicated that
“at some point I’m going — I’m going to cut you off, and we’re going to do rounds on these people. It’s now [four] o’clock. Before we go forward I’m going to stand them up and let them stretch. They (sic) been in here for fifty minutes or so. If you use twenty — and I’m not suggesting you should — but if you have a lot more to ask — in about ten or fifteen more minutes I’m probably going to cut you off.”
At the end of the questioning of this particular group of jurors, another bench conference was held. The following discussion took place:
MR. JEFFRESS: I want to — perhaps this is not the time, but I think that I have to object to being cut off on the voir dire.
THE COURT: I haven’t cut you off yet.
MR. JEFFRESS: Well—
THE COURT: I told you I was going to cut you off in fifteen minutes, but I wasn’t.
MR. JEFFRESS: Well, I feel like I have been.
THE COURT: If you want to ask some other questions, you can do that.
MR. JEFFRESS: No, I think we’ve done — (Inaudible phrase)
THE COURT: Okay. Your objection is noted for the record and is recorded in support of this.
MR. JEFFRESS: Okay.
The record reflects that the trial court did not cut off defense counsel’s opportunity to question the potential jurors. Counsel was given a second opportunity to question the potential jurors after raising his objection at the bench but did not do so. Accordingly, it was not the trial court that limited the questions asked by defense counsel.
This issue is without merit.
V. PSYCHOLOGICAL RECORDS OF CHRISTINA RHODES
The defendant contends that the trial court erred by not allowing defense counsel to review the psychological treatment records of Christina Rhodes, the daughter of the victim, who witnessed the killing of her mother and who testified at trial on behalf of the state. The defense requested these records so they could cross-examine the witness regarding her competency and credibility both at the time of the offense and at trial. Specifically, the defendant asserts that without these records he was unable to effectively question her credibility, with particular reference to what she actually observed and heard at the time of the offense and how later psychological problems may have affected her memory *271 as to those events. Upon review of the sealed records, we find that the trial court properly held that the psychological treatment records need not be disclosed.
Upon discovery that Ms. Rhodes had been seen by a psychologist after the death of her mother, the defense filed a “Motion to Compel Identification of Psychiatrist or Psychologist Treating Witness Christie Rhodes.” The prosecution obtained the name of the psychologist from Christina’s father. The defense then filed a subpoena for the treatment records, which the trial court granted. Before the records were delivered, the trial court indicated to defense counsel that it was willing to conduct an in camera examination of the records to determine whether “(a) there is anything exculpatory or (b) there is anything within those reports that would indicate some lack of reality, I guess is what you’re looking for.” Defense counsel indicated that the trial court was correct. Upon conducting an in camera examination of the records, the trial court made 'the following finding:
[Christina] had some nightmares in the beginning and they got better and then flashbacks, nothing about what happened, nothing about hallucinations, nothing about — she said she didn’t remember her dreams. She didn’t remember the nightmares when she woke up.
I’m not going to release the records, and I will put them under seal
[[Image here]]
In State v. Middlebrooks, 840 S.W.2d 317 (Tenn.1992), our Supreme Court held that to ensure a defendant’s right to cross-examine is not denied, trial courts should review psychiatric records of witnesses in camera to determine if the records are relevant in determining the witness’ veracity. Id. at 333. In Middlebrooks, the trial court’s failure to review the records was held to be harmless error because a review of the sealed records revealed that they contained very little information probative on the issue of credibility. Id. In the present ease, the trial court properly reviewed the psychological records of Christina and determined that the information contained need not be disclosed to the defense. Having reviewed the psychological records, this Court agrees that the records need not be disclosed. They contain nothing exculpatory.
This issue is without merit.
(Deleted Roman numeral “VI” — Discussion of sufficiency of evidence supporting heinous, atrocious, or cruel aggravation circumstance)
(Deleted Roman numeral “VII”— Constitutionality of the Death Penalty Statute)
(Deleted Roman numeral “VIII”— Proportionality Review)

CONCLUSION

Our review of the record indicates the defendant received a fair trial, was justly convicted, and was sentenced to death by the jury. Concluding there is no error in the record before this Court, we AFFIRM the conviction and sentence of death.